DANIEL RAY MAHAN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 17715

March 30, 1988                               752 P.2d 208

*David Parraguirre,* Public Defender, *David A. Cass,* Deputy Public Defender, Washoe County, for Appellant.

*Brian McKay,* Attorney General, Carson City, *Mills Lane,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

*Per Curiam:*

Appellant Daniel Ray Mahan was convicted of robbery with use of a deadly weapon and battery with use of a deadly weapon. On appeal, Mahan contends he was denied a fair trial due to prosecutorial misconduct. Although we do not agree with Mahan's characterization of misconduct by the prosecutor, the practical equivalent of misconduct did occur and deprive Mahan of a fair trial. We therefore reverse and remand for a new trial.

## *Facts*

At approximately 10 p.m. on May 5, 1986, James Kane, a Reno taxicab driver, saw a man approaching his cab. Kane noticed that the man had red hair, wore a black baseball cap and a red and white plaid coat, and was carrying a blue vinyl bag. After asking if Kane was free, the man got in and asked to be driven to a specified location. During the drive, which lasted at most five. minutes, Kane glanced at his passenger two or three times via the rear view mirror.

Upon reaching the requested destination, Kane commenced putting his vehicle in park when he heard some stirring in the back seat and the sound of a folding knife opening. Suddenly, Kane noticed a knife coming right for his head. Instinctively, Kane threw up his arm to defend himself, which resulted in a cut to his wrist. Pulling the knife back, the man again thrust the knife at Kane who, in an attempt to grab the man's hand, grabbed the knife blade and suffered a cut palm. The man demanded money and Kane gave him approximately $59.00. Kane's assailant got out of the cab and fled; his baseball cap was found in the back seat.

Kane contacted the police and assisted them in compiling a composite drawing of his assailant. An immediate search of the neighborhood produced no results. On the next day, Officer Marvin Barnes, a participant in the Kane robbery investigation, was assisting fellow officers in an entirely unrelated matter— execution of a misdemeanor arrest warrant. While the person

sought was not present at the prescribed address, Barnes noticed that one of the adult males present, appellant Daniel Ray Mahan, bore a strong resemblance to the individual in the composite drawing.

Kane was shown a photographic lineup containing Mahan's picture and identified Mahan as the individual who assaulted and robbed him. At trial, a hair comparison expert testified that hair fibers found on the baseball cap did not match Mahan's hair. Two witnesses testified that at the time of the robbery, Mahan was at home watching television. A third witness who lived across the street from Mahan stated that he saw Mahan around 9 p.m.[1] One of the witnesses, Mahan's mother, also testified that Mahan did not own any red plaid clothes, a blue vinyl bag or a black cap.

On direct examination, Officer Daniel Tapia testified that fingerprints were taken from Kane's vehicle and that none of the prints belonged to Mahan. On cross-examination, Tapia indicated that his conclusions regarding the fingerprints had been deduced from a report. Defense counsel, noting that he had never seen this report or known of its existence, immediately asked for a temporary adjournment in order that the report be produced; however, the prosecutor stated that it was her understanding that no such report existed. Accordingly, the trial judge ordered the State to produce the report if there was one, and denied defense counsel's request. Following a noon recess, the prosecutor, during redirect examination of Tapia, introduced the fingerprint report. Tapia testified that the result of the report was that "no identifiable fingerprints were effected."

During closing argument, defense counsel stated, "you also heard . . . that the police . . . were able to collect some fingerprints. You also heard from the same police officer, 'No, they were not—they did not match the prints that Daniel Mahan voluntarily gave.' " However, during her rebuttal, referring to Tapia's statement that "no identifications were effected," the prosecutor told the jury, "Now, as to what that means, there is no testimony. So to say that they did not match is an absolute falsehood." Defense counsel objected, noting that it was Tapia's testimony that the prints did not match Mahan's. The prosecutor, however, argued to the court that Officer Tapia had corrected himself on the witness stand, to which the trial judge replied, "That's correct, you're both correct." Thereafter, the prosecutor again addressed the jury and stated, "Now he admitted his mistake. . . . He told you he was mistaken the first time. And I

---

[1]This court, of course, expresses no opinion as to the strength or veracity of the alibi witnesses. The record does indicate Mahan's alibi, as presented by the three witnesses, may have been discredited by voluntary statements Mahan made to the police.

restate his [defense counsel's] statement that the prints did not match is absolutely incorrect."

Mahan was convicted of robbery with the use of a deadly weapon and battery with a deadly weapon. A motion for a new trial was denied. In the hearing on that motion, Officer David Billau, who filled out the fingerprint report introduced at trial, testified that the term "no identifications were effected" means that a fingerprint comparison was made and that the prints lifted off the cab did not match Mahan's prints.

## Discussion

On appeal, Mahan argues that the prosecutor's comments concerning the fingerprint evidence constitute misconduct denying him a fair trial. In response, the State, while admitting the prosecutor's comments were wrong (i.e., incorrect), argues that the remarks should be deemed harmless.

The only real evidence that Mahan committed the battery and robbery was Kane's eyewitness identification. The fact remains that there was a print comparison made showing that the prints from the taxicab did not match Mahan's. Despite this fact, the prosecutor, arguing reasonably from Tapia's restated testimony, mischaracterized the evidence in telling the jury that it was absolutely false to say that the prints did not match Mahan's. What further exacerbates the problem created by the prosecutor is that, not only was the fingerprint report belatedly introduced at trial, but the prosecutor's mischaracterization of the evidence received the apparent support of the trial judge. Furthermore, although the prosecutor had a reasonable basis for concluding that Tapia's revised testimony indicated that no identifiable fingerprints were taken from the cab, nothing in Tapia's testimony constituted an admission of mistake in his initial testimony. In any event, Officer Billau's post-trial testimony made it clear that his report intended to reflect that fingerprints were indeed taken from Kane's taxicab and they did not match those of the defendant, Mahan.

We have noted that improper remarks by a prosecutor will not require reversal if the evidence supporting the conviction is substantial and the defendant was not prejudiced thereby. Pickworth v. State, 95 Nev. 547, 550, 598 P.2d 626, 627 (1979). In the instant case, the evidence convicting Mahan primarily consisted of Kane's eyewitness identification of Mahan as his assailant. Both the hair analysis and the fingerprint report were exculpatory in nature. The prosecutor's mischaracterization of the fingerprint evidence occurred during the rebuttal phase of her closing argument, and defense counsel had no opportunity to

respond. Although the effect of the prosecutor's remarks in depreciating and essentially neutralizing the fingerprint evidence is speculative, we are persuaded that the comments may have unfairly or wrongfully influenced the jury in its verdict. Our concerns are magnified in the instant case because: (1) the evidence convicting the defendant does not appear to be overwhelming, (2) the prosecutor's mischaracterization of the evidence received the apparent approval of the trial judge, (3) the prosecutor's erroneous remarks occurred during rebuttal, and (4) defense counsel had no opportunity to respond. We are therefore not persuaded that Mahan was fairly convicted. Accordingly, we reverse and remand the case for a new trial.